NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0120n.06

Case No. 22-3214

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 09, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff - Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| KENNETH SHARP, | ) |
| Defendant - Appellant. | ) |

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

OPINION

Before: GIBBONS, BUSH, and MATHIS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Officers stopped Kenneth Sharp, a felon, while he was driving a vehicle that had been reported stolen. During the stop, other passengers showed the officers an open bottle of liquor, and the officers saw marijuana paraphernalia. The officers searched the vehicle and found a handgun. While on bond awaiting trial for unlawful possession of a firearm as a felon, Sharp was arrested for possessing another handgun. A jury later convicted Sharp of possessing both handguns. Sharp's Sentencing Guidelines range was 21-27 months, but the district court varied upward to sentence Sharp to 36 months because of Sharp's criminal history, which was not entirely accounted for in the Sentencing Guidelines. Sharp appealed, challenging the district court's denial of his motion to suppress and the reasonableness of his sentence. Because the district court did not err in either respect, we affirm.

**I.**

In September 2020, law enforcement officers patrolling in Cleveland, Ohio, noticed a Ford Excursion driving erratically. A search of the vehicle's license plate number revealed that it had been reported stolen. The officers stopped the vehicle, which Sharp drove with several passengers.

During the stop, Sharp told the officers that the vehicle was in his girlfriend's name but was effectively his. Sharp also said that his girlfriend had reported the vehicle stolen when she was angry with him and had failed to withdraw the report. The officers attempted to contact Sharp's girlfriend but did not immediately reach her. The officers handcuffed Sharp and removed him from the vehicle while they investigated.

One of the officers then asked the other passengers whether there was anything in the vehicle that should not be there. The passenger who was sitting in the front seat held up an open, partially full bottle of tequila. The officer also saw a bright orange tray with visible flecks of marijuana on it and three small glass containers that contained suspected marijuana residue. When the officer asked what the tray was for, the front-seat passenger said that it was used to "roll your weed." DE 50, Mot. to Suppress Hr'g Tr., Page ID 241. The officer also smelled marijuana in the vehicle.

Officers searched the vehicle and found two loaded handgun magazines and an unloaded Glock handgun. The officers arrested Sharp for possessing the handgun. The officers also conducted a full inventory search of the vehicle because they planned to have it towed.[1] While on bond, Sharp was arrested again for possession of a firearm.

A grand jury indicted Sharp for being a felon in possession of a firearm. Sharp moved to suppress the evidence from the vehicle search. The grand jury later returned a superseding

---

[1] The officers released the SUV to Sharp's girlfriend when she arrived at the scene.

indictment adding a second felon-in-possession count based on Sharp's second arrest. After two evidentiary hearings, the district court denied Sharp's motion. A federal jury found Sharp guilty on both felon-in-possession counts.

At sentencing, the district court calculated Sharp's Sentencing Guidelines range as 21-27 months based on an offense level of 14 and criminal history category of III.[2] Sharp's criminal history score accounted for three state convictions: one each for possessing marijuana, attempted receiving of stolen property, and driving under suspension or license restriction. Sharp also had approximately two dozen convictions for driving-related misdemeanors and another dozen traffic infractions. Two other gun offenses did not count toward Sharp's criminal history score because they were too old, one involving domestic violence and the other in connection with a shooting. For mitigation, Sharp relied on evidence that he grew up in a dangerous neighborhood where drug and gang activity were frequent. The district court varied upward from the Sentencing Guidelines range, reasoning that, because Sharp had multiple convictions that did not factor into his criminal history score, including a couple of gun offenses, a 27-month sentence was insufficient. It sentenced Sharp to 36 months' imprisonment. Sharp timely appealed the denial of his motion to suppress and his sentence.[3]

---

[2] The Presentence Investigation Report had erroneously assigned Sharp a lower criminal history category of II because it failed to add a point to account for the fact that Sharp was on probation in state court when he committed the counts at issue in this case.

[3] In his principal brief on appeal, Sharp once states that he is also appealing the district court's denial of his motion to dismiss the superseding indictment based on an alleged Speedy Trial Act violation, and elsewhere notes that this issue was included in his original notice of appeal in the district court. However, Sharp did not include the speedy trial issue in his statement of the issues presented on appeal, and he presents no argument that his speedy trial rights were violated. Sharp has therefore abandoned this issue. *See Doe v. Mich. State Univ.*, 989 F.3d 418, 425 (6th Cir. 2021) ("Generally, an appellant abandons all issues not raised and argued in its initial brief on appeal.") (internal quotation marks omitted).

**II.**

When reviewing a district court's ruling on a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Trice*, 966 F.3d 506, 512 (6th Cir. 2020) (citing *United States v. Hines*, 885 F.3d 919, 924 (6th Cir. 2018)).

We review the substantive reasonableness of a sentence for abuse of discretion. *United States v. Lanning*, 633 F.3d 469, 473 (6th Cir. 2011).

**III.**

We begin with Sharp's motion to suppress evidence. The Fourth Amendment permits law enforcement officers to search a vehicle without obtaining a search warrant if they have probable cause to believe that the vehicle contains evidence of a crime.[4] *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999) (citing *Carroll v. United States*, 267 U.S. 132, 153 (1925)). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Illinois v. Gates,* 462 U.S. 213, 243-44 n.13 (1983)). The existence of probable cause depends on the "totality of the circumstances." *Id.* (citation omitted).

Here, probable cause supported the officers' search of the vehicle Sharp was driving for three reasons. First, the vehicle had been reported stolen. *See Smith v. Thornburg*, 136 F.3d 1070, 1075 (6th Cir. 1998) (officers who "had probable cause to believe the [vehicle] may have been a stolen vehicle" also had probable cause to "enter the vehicle to determine whether it had been tampered with or to determine the identity of the owner"). While Sharp insists that his explanation

---

[4] Although the inventory search exception to the Fourth Amendment's warrant requirement, coupled with the inevitable discovery doctrine, also arguably justifies the officers' search here, the government has expressly waived reliance on the inventory search exception.

about his girlfriend's stolen vehicle report should have assuaged the officers' concerns, "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." *Wesby*, 138 S. Ct. at 588.

Second, the vehicle contained evidence of marijuana activity including the smell of marijuana and visible paraphernalia used for marijuana. *See United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002) ("This court has held that an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search.") (citing *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993)); *see also United States v. Michael Johnson*, 707 F.3d 655, 658 (6th Cir. 2013) (same). Sharp argues that one officer was not familiar with the tray's use for marijuana and did not note the smell of marijuana in the police report. But the officer testified that he did recognize the tray as one commonly used for marijuana, and, in any event, it is undisputed that the front-seat passenger told him as much. The officer also testified that he smelled marijuana and explained that police reports do not contain every detail of a search. Viewing this evidence in the light most favorable to the government, *see United States v. Gilbert*, 952 F.3d 759, 762 (6th Cir. 2020), the officers had probable cause to search the vehicle based on evidence of marijuana.

Third, the open container of alcohol in the vehicle also contributed to the existence of probable cause. In Cleveland, such a violation is punishable by up to thirty days in jail. *See* Cleveland Mun. Code § 617.07(b)(5), (d); *see also United States v. Howton*, 260 F. App'x 813, 816-17 (6th Cir. 2008) (open container established probable cause in jurisdiction where open-container violation was punishable by jail time); *United States v. Latham*, 763 F. App'x 428, 431 (6th Cir. 2019) (same).[5] We need not decide whether the open container would have sufficed on

---

[5] Sharp argues that the open-container violation did not contribute to the officers' actual motivations for conducting the search. But the officers' motivation is irrelevant given their undisputed knowledge that the open container was in the vehicle. *See Whren v. United States*,

its own to establish probable cause because the stolen-vehicle report and marijuana evidence also supported the existence of probable cause. We affirm the district court's denial of Sharp's motion to suppress.

**IV.**

Because Sharp does not argue that the district court incorrectly calculated his Sentencing Guidelines range or otherwise erred procedurally in imposing his sentence, we construe his sentencing argument as a challenge to the substantive reasonableness of his sentence. "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008) (citing *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005)). A sentence outside the Guidelines range "is not per se or even presumptively unreasonable." *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019). But a district court must "consider the extent of the deviation to ensure that the justification is sufficiently compelling to support the degree of variance." *Gall v. United States*, 552 U.S. 38, 50 (2007). An upward variance based largely on criminal history, like the one the district court imposed here, is more likely to be reasonable in a case that falls outside the "'heartland' of average cases" than in a "'mine-run case.'" *Boucher*, 937 F.3d at708 (quoting *Kimbrough v. United States*, 552 U.S. 85, 109 (2007)).

Here, we need not decide whether this is a "mine-run" case or one that falls outside the "heartland," because either way, two separate grounds support the district court's nine-month upward variance to account for Sharp's criminal history. First, Sharp had prior gun crimes

517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.")

comparable to the instant offenses, a permissible basis for some upward variance even if, unlike here, the Sentencing Guidelines already account for the past offenses in question. *See United States v. Dunnican*, 961 F.3d 859, 881 (6th Cir. 2020) (21-month upward variance based on two previous violent firearms offenses reasonable); *United States v. Philroy Johnson*, 934 F.3d 498, 499-500 (6th Cir. 2020) (14-month upward variance based on numerous previous firearms offenses reasonable). So this is not a case in which the defendant's prior offenses on which the district court relied for an upward variance bore no "meaningful relationship" to the instant offense. *See United States v. Lee*, 974 F.3d 670, 677 (6th Cir. 2020).

Second, Sharp's record included many other offenses that were too minor to count toward his criminal history score; these offenses further support the district court's upward variance. *See e.g.*, *United States v. Martinez-Rendon*, 454 F. App'x 503, 506 (6th Cir. 2012) (affirming 32-month upward variance based in part on uncounted misdemeanors); *United States v. Williams*, 807 F. App'x 505, 509-10 (6th Cir. 2020) (affirming 20-month upward variance based in part on the same); *United States v. Hoff*, 767 F. App'x 614, 625-26 (6th Cir. 2019) (affirming 10-month upward variance based in part on the same).

Thus, the district court did not abuse its discretion in imposing a 36-month sentence.

**V.**

We affirm.